IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * * * | 3:00-CR-00071 |
| Plaintiff, | * * | |
| v. | * * | |
| JUAN LEDEZMA-RODRIGUEZ, | * * | ORDER GRANTING COMPASSIONATE RELEASE |
| Defendant. | * * | |

Before the Court is Defendant Juan Ledezma-Rodriguez's renewed Motion for Compassionate Release, filed on July 1, 2020. ECF No. 216. The Government filed its Resistance on July 10. ECF No. 217. The matter is fully submitted.

## I. BACKGROUND

Defendant was born in Michoacán, one of Mexico's western states, in 1973. ECF No. 146 ¶ 69. He exhausted available education opportunities with the sixth grade, *id.* ¶ 82, and unlawfully came to the United States around 1990, ECF No. 201-1 at 2. He thrice returned after deportation. ECF No. 146 ¶ 65. He married a woman in Oregon and fathered three children with her. *Id* ¶ 72–73.

In the late 1990s, Defendant supplied methamphetamine and cocaine to some Iowans. *Id.* ¶ 7. He was a non-violent, low-level offender with no ties to large-scale criminal organizations or drug cartels. ECF No. 201-1 at 2–3. What distinguished Defendant from the many others appearing before the Court under similar circumstances was that statute required he spend the rest of his life in prison.

The Government charged Defendant in a 2001 seven-count superseding indictment with violations of immigration, firearm, and drug laws.[1] ECF No. 146 ¶ 1. The Government also filed two notices under 21 U.S.C. § 851 for prior minor drug convictions.[2] *Id.* ¶ 4. The jury convicted on four counts. *Id.* ¶ 3. Because of the prior two § 851 notices, the Court sentenced Defendant to life imprisonment, as statutorily required. *Id.* ¶ 4; *see also* ECF No. 201-1 at 1.

The Court has not hidden its conclusion that Defendant's sentence was "manifestly unjust." ECF No. 201 at 4. In 2016, the Court wrote a letter in support of clemency. *Id.* at 1. In 2017, it urged the U.S. Attorney to move to vacate Defendant's convictions under *United States v. Holloway*, 68 F. Supp. 3d 310 (E.D.N.Y. 2014). ECF No. 201 at 4. The Court supported such remedies because Defendant would face a mandatory minimum of just fifteen years if prosecuted today. *See* 21 U.S.C. § 841 (b)(1)(A); 18 U.S.C. § 924(c).

> This discrepancy is a purely arbitrary by-product of the points in time at which the offense conduct was prosecuted and Defendant was sentenced; it has no basis in the offense conduct itself, in the character of the Defendant, or even in the policy goals of sentencing espoused by our criminal justice system.

*Id.*

Circumstances and law have changed more, still, in 2020. The virus known as COVID-19 has killed more than 135,000 Americans and infected more than 3.3 million in a few months. *Mortality Analysis*, Johns Hopkins U. & Med. (July 13, 2020, 5:51 AM), https://coronavirus.jhu.edu/data/mortality. "At this time, there is no known cure, no effective treatment, and no vaccine. Because people may be infected but asymptomatic, they may unwittingly infect others." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020)

---

[1] Defendant had negotiated a plea agreement with the Government. ECF No. 146 ¶ 2. However, following a dispute between the parties, the Court reinstated Defendant's not guilty plea. *Id.* ¶¶ 2–3.

[2] In 1990, Defendant received a sixty-day sentence for cocaine delivery/manufacture when he was seventeen. ECF No. 146 ¶¶ 4, 57. Defendant received another thirty-day sentence for cocaine delivery in 1991. *Id.* ¶¶ 4, 59

(Roberts, C.J., concurring).  The virus is "devastating to those unfortunate enough to contract it. It attacks the nose, throat, and lungs of its victims, resulting in effects ranging from flu-like symptoms, to pneumonia, to acute respiratory disease, to death." *Wilson v. Williams*, 961 F.3d 829, 845 (6th Cir. 2020) (Cole, C.J., concurring in part and dissenting in part).

We limit access to courts, schools, churches, theaters, and "non-essential" businesses—places where there are too many people and too little space to keep the virus from spreading. That sounds a lot like federal prison.  Already "tinderboxes for infectious disease," prisons now are even more dangerous than we typically accept. *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020).  At least 2938 inmates and 242 Federal Bureau of Prisons (BOP) employees have "open" and "confirmed" cases. *COVID-19 Cases*, Fed. Bureau Prisons (July 13, 2020), https://www.bop.gov/coronavirus/.  Ninety-four inmates and an employee have died. *Id.*  Meanwhile, 5140 inmates and 615 staff have had the virus but recovered. *Id.*  Although no inmates at USP Lee in Pennington Gap, Virginia, have yet tested positive, two employees have open and confirmed cases. *Id.*

It is hard to compare these numbers to those for the United States at large.  This is so because it remains unclear when the BOP tests inmates or employees. *See BOP Implementing Modified Operations*, Fed. Bureau Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 13, 2020) (describing inmate screening procedures).  The BOP screens staff through "self-reporting and temperature checks." *Id.*

The BOP indeed faces a daunting task.  It has undertaken emergency measures to halt the virus's spread*. Id.*  Social visits are cancelled, prisoner movement is limited, and legal visits are suspended subject to exception. *Id.*  At the same turn, it is unclear what the future holds as states

3

grapple with the virus's resurgence.  *E.g.*, Arian Campo-Flores et al., *U.S. Policy Patchwork Spurs New Covid Surge*, Wall St. J., July 10, 2020, A1.

There is another difference between the time of Defendant's prior post-conviction motions and now: Congress granted district courts power to hear compassionate release motions directly from defendants.  *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019).  On June 1, 2020, Defendant, through counsel, requested compassionate release from his warden.  ECF No. 216-1 at 3.  He argued (1) the fact he would not have received his life sentence under modern law; (2) his twenty years incarcerated; (3) his rehabilitation; (4) his need to care for his gravely ill mother; and (5) his risk of catching COVID-19 in prison constituted extraordinary and compelling reasons justifying release.  Defendant acknowledged he would be deported following release.  *Id.*

Defendant then filed the present Motion.  ECF No. 216.  The Government argues Defendant failed to present "extraordinary and compelling reasons" for release.  ECF No. 217.  However, citing this Court's prior rulings on compassionate release motions and the "facts of this case," the Government declined to make or "repeat" any specific arguments.  *Id.*

## II.  ANALYSIS

The First Step Act of 2018 amended numerous provisions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration.  Cong. Research Serv., R45558, *The First Step Act of 2018: An Overview* 1 (2019).  Congress designed the statute at issue here, § 3582(c)(1)(A), for "Increasing the Use and Transparency of Compassionate Release."  § 603(b), 132 Stat. at 5239.  This provision allows defendants, for the first time, to petition district courts directly for compassionate release.  *Id.*  Under the old regime, defendants could petition only the BOP Director, who could then make a motion, at his or her discretion, to

the district court.  *See* U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.4 (U.S. Sentencing Comm'n 2018) [hereinafter U.S.S.G.].  The Director rarely did so.  *Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice).

### A.  *Exhaustion*

The First Step Act's gate-keeping provision created two ways for a defendant to bring a compassionate release motion to a district court.  The defendant may file a motion after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  § 3582(c)(1)(A) (emphasis added).

Here, Defendant satisfied the gate-keeping provision because thirty days have passed since the BOP received his request.[3]  ECF No. 216-1.  The Court may address the merits.

### B.  *Extraordinary and Compelling Reasons*

Compassionate release provides a path for defendants with "extraordinary and compelling reasons" to leave prison early.  § 3582(c)(1)(A)(i).  Such a sentence reduction must comply with the 18 U.S.C. § 3553(a) factors and "applicable policy statements issued by the Sentencing Commission."  § 3582(c)(1)(A).

1. Definitions

Congress never defined what constitutes "extraordinary and compelling."  *See* 28 U.S.C. § 994(t).  Instead, Congress directed the Sentencing Commission to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples.  *Id.*  Before the First

---

[3] To the extent the Government's resistance addresses any specific arguments, it does so on substantive, rather than procedural, grounds.  *See* ECF No. 217 at 1.

Step Act, the Commission provided just three: terminal illness, an elderly inmate's rapidly declining health, and care for dependent family members. U.S.S.G. § 1B1.13 cmt. n.1.

The Commission also provided a catch-all provision that allows the BOP Director to determine "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the" examples described above. *Id.* § 1B1.13 cmt. n.1(D). That still begs the question: what is extraordinary and compelling?

Congress and the Commission gave only two guideposts. Extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing." *Id.* § 1B1.13 cmt. n.2. For example, just because a judge believes a defendant will dramatically improve himself while incarcerated, that does not mean she cannot deem such improvement extraordinary and compelling. And although "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason," its mention by Congress indicates rehabilitation may be considered with other factors. § 994(t) (emphasis added); *see also* U.S.S.G. § 1B1.13 cmt. n.3.

Courts otherwise are left to themselves because the Commission never updated its policy statement for the First Step Act.[4] Rather, the outdated policy statement still assumes compassionate release "may be granted only upon motion by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.4. This left district courts in a conundrum. On the one hand, Congress said it wished to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease," § 603(b), 132 Stat. at 5239, by allowing district courts to grant petitions "consistent with *applicable* policy statements" from the Commission, § 3582(c)(1)(A) (emphasis added). On the

---

[4] The Commission cannot amend its guidelines until it again has four voting commissioners. *United States v. Cantu*, 423 F. Supp. 3d 345, 348 n.1 (S.D. Tex. 2019) (quoting *United States v. Handerhan*, No. 1:10-CR-00298, 2019 WL 1437903, at *1 n.4 (M.D. Pa. Apr. 1, 2019)). The Commission still has only two voting members. *About the Commissioners*, U.S. Sentencing Comm'n, https://www.ussc.gov/commissioners (last visited July 13, 2020).

6

other hand, the Commission has not made the policy statement for the old regime applicable to the new one.

Many courts, including this one, have concluded this means the Commission lacks an applicable policy statement regarding when a court can grant compassionate release. *United States v. Brown*, No. 4:05-CR-00227-1, 2020 WL 2091802, at *6 (S.D. Iowa Apr. 29, 2020), *appeal dismissed following government request*, No. 20-2053 (8th Cir. June 16, 2020); *United States v. Haynes*, No. 93 CR 1043 (RJD), 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (citing thirteen such cases). In the absence of an applicable policy statement, these courts conclude "the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief." *Cantu*, 423 F. Supp. 3d at 352; *see also United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) (treating "the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts"). The result is that the district court can consider anything—or at least anything the BOP could have considered—when assessing a defendant's motion. This now "appears to be the majority position." *United States v. Scott*, No. 17-CR-156, 2020 WL 2508894, at *8 (E.D. Wis. May 15, 2020).

The Government continues to reject this view. ECF No. 217. Hearing no persuasive arguments to the contrary, the Court continues to embrace it. *See United States v. Jacobs*, No. 4:19-CR-00149, 2020 WL 3637625, at *4 (S.D. Iowa July 2, 2020); *United States v. Clark*, No. 4:08-CR-00096, 2020 WL 3395540, at *4 (S.D. Iowa June 17, 2020); *United States v. O'Neil*, No. 3:11-CR-00017, 2020 WL 2892236, at *5 (S.D. Iowa June 2, 2020); *United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *4 (S.D. Iowa May 21, 2020). In sum, if the First Step Act is to increase the use of compassionate release as intended, the most natural

reading of § 3582(c) is that the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it.

2. Defendant's Extraordinary and Compelling Reasons

   a. Sentencing Disparity

Several courts, including this one, have concluded that drastic sentencing disparities created by sentencing law reforms can be an extraordinary and compelling reason supporting release. *Brown*, 2020 WL 2091802, at *8 (holding changes to mandatory minimum sentence calculations for violations of 18 U.S.C. § 924(c) constitute one of several extraordinary and compelling reasons); *United States v. McPherson*, No. CR94-5708RJB, 2020 WL 1862596, at *5 (W.D. Wash. Apr. 14, 2020) ("It is extraordinary that a civilized society can allow this to happen to someone who, by all accounts, has long since learned his lesson."); *United States v. Wade*, No. 2:99-CR-00257-CAS-3, 2020 WL 1864906, at *4 (C.D. Cal. Apr. 13, 2020); *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *5 (D. Utah Feb. 18, 2020) (considering § 924(c) amendments); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019) ("A reduction in his sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed."), *appeal dismissed following government request*, No. 20-1603 (8th Cir. Apr. 1, 2020).

Here, as the Court has long maintained, Defendant's life sentence for low-level, non-violent drug trafficking "would be laughable if only there w[as not a] real p[erson] on the receiving end." *Holloway*, 68 F. Supp. 3d at 312; *see also* ECF No. 201. Defendant only faced a mandatory life sentence because the Government chose to flag two prior drug convictions under § 851. These prior convictions were incredibly minor—Defendant served a combined ninety

days for the two offenses—yet they were sufficient to trigger a mandatory life sentence under a more draconian version of § 841. § 841(b)(1)(A) (2000).

Congress has since made drastic changes to the law. Now, only a "serious drug felony" for which the defendant served more than a year of imprisonment can trigger an enhanced penalty under § 841(b)(1)(A). *See* § 841(b)(1)(A) (2018); 21 U.S.C. § 802(57). Because Defendant served less than a year for each offense, neither would qualify.[5] *See* ECF No. 146 ¶¶ 57, 59. Thus Defendant would only face a mandatory minimum of ten years for the possession of methamphetamine with the intent to distribute not life. Combined with the mandatory minimum of five years to be served consecutively under § 924(c), Defendant's total mandatory minimum would be just fifteen years of imprisonment. Defendant has been in federal custody since March 2000. ECF No. 14.

More importantly, a life sentence is objectively inhumane here. Yes, Defendant had a habit of selling narcotics in his teens and twenties. He also snuck into the United States multiple times. But he is hardly alone on either front, and most people guilty of similar crimes do not face life in prison. U.S. Sentencing Comm'n, *Life Sentences in the Federal System* 4 (2015) (finding "a life sentence is rare in drug trafficking cases, having been imposed in less than one-third of one percent of all drug trafficking cases" in 2013). The Court agrees with Defendant: there is not a district judge in this country who would see Defendant's record and conclude a life sentence is appropriate. The Court understands the importance of finality in criminal proceedings. Even so, justice has a role, too. The fact Defendant received a mandatory life sentence for a low-level drug crime is "extraordinary" in itself. § 3582(c)(1)(A)(i).

---

[5] And even if Defendant had two prior convictions for a "serious drug felony," as required under modern law, the mandatory minimum would be just twenty-five years. § 841(b)(1)(A) (2018).

9

The Court is sensitive to the fact that retroactivity for sentencing calculations generally is the Legislature's province. But Congress already demonstrated how factors that cannot be an "extraordinary and compelling reason" alone can still be considered with other factors. *See* § 994(t). And if this is so, it is hard to argue that the unfairness of keeping a man in prison for decades more than if he had committed the same crime today is anything other than compelling. This is especially so when Defendant almost certainly would have completed his term of imprisonment by now if sentenced under modern law. Defendant thus presents an "extraordinary and compelling reason[]" for a sentence reduction under § 3582(c)(1)(A)(i).

    b. Rehabilitation

Defendant also argues his substantial rehabilitation during twenty years in prison constitutes a second extraordinary and compelling reason. "Rehabilitation of the defendant *alone* shall not be considered" sufficiently extraordinary and compelling to justify compassionate release. § 994(t) (emphasis added). Yet a "statute should be construed so that effect is given to all its provisions." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). This means that for the word "alone" to do any work—as it must—the statute allows courts to consider rehabilitation as part of a compassionate release motion. Thus, several courts, including this one, have found a defendant's rehabilitation to be part of the extraordinary and compelling reasons favoring release. *E.g.*, *Brown*, 2020 WL 2091802, at *7; *Wade*, 2020 WL 1864906, at *5; *United States v. Chan*, No. 96-CR-00094-JSW-13, 2020 WL 1527895, at *6 (N.D. Cal. Mar. 31, 2020); *United States v. Perez*, No. 88-10094-1-JTM, 2020 WL 1180719, at *3 (D. Kan. Mar. 11, 2020).

Here, Defendant provided ample evidence that he is no longer the same person whom this Court incarcerated two decades ago. Defendant has not incurred a single disciplinary infraction

since 2014, no small feat in a closely monitored federal prison. ECF No. 208 at 7. This shows marked improvement—Defendant incurred six minor infractions during his first twelve years incarcerated. ECF No. 208-1 at 16. The BOP also has since downgraded his security classification. *Id.* at 7. He meanwhile obtained the equivalent of a high school diploma in 2016, *id.* at 24, and made extensive use of USP Lee's programming until it was shut down following prison unrest, *see id.* at 5–6, 24; ECF No. 208 at 6 n.3.

The Court realizes convictions littered Defendant's late teens before his current offense, committed in his twenties. *See* ECF No. 146 at ¶¶ 7, 56–60. But, rightly or wrongly, this country's criminal justice system is premised on the idea that a person can—and hopefully will—change after several years locked in prison. The BOP tries to facilitate this through classes, case managers, reentry programs, time credits, and security classifications. Defendant appears to offer a success story that cuts in favor of extraordinary and compelling reasons supporting release.

    c. COVID-19

The number of courts agreeing that the COVID-19 pandemic constitutes an extraordinary and compelling reason for release still grows by the day. *E.g.*, *United States v. Johnson*, No. CR H-96-176, 2020 WL 3618682, at *3 (S.D. Tex. July 2, 2020); *United States v. Young*, No. 14-CR-30024-2, 2020 WL 3605025, at *2 (C.D. Ill. July 2, 2020); *United States v. Plank*, No. 17-20026-JWL, 2020 WL 3618858, at *3 (D. Kan. July 2, 2020); *United States v. Tillman*, No. 12-CR-2024-CJW-MAR, 2020 WL 3578374, at *5 (N.D. Iowa June 30, 2020); *United States v. Ollie*, No. CR 1:12-09, 2020 WL 3469754, at *3 (W.D. Pa. June 24, 2020); *United States v. Williams*, No. 06-CR-0143 (WMW/FLN), 2020 WL 3097615, at *2 (D. Minn. June 11, 2020); *United States v. Nazzal*, No. 10-20392, 2020 WL 3077948, at *4 (E.D. Mich. June 10, 2020);

11

*United States v. Mason*, No. 317CR104CWRLRA3, 2020 WL 3065303, at *2 (S.D. Miss. June 9, 2020); *United States v. Conner*, No. CR07-4095-LTS, 2020 WL 3053368, at *7 (N.D. Iowa June 8, 2020); *United States v. Moore*, No. 3:16-CR-00171-JO, 2020 WL 2572529 (D. Ore. May 21, 2020); *United States v. Galloway*, No. RDB-10-0775, 2020 WL 2571172 (E.D. Mich. May 21, 2020); *United States v. Parker*, No. 2:98-cr-00749, 2020 WL 2572525 (C.D. Cal. May 21, 2020*)*; *United States v. Schneider*, No. 14-CR-30036, 2020 WL 2556354, at *1 (C.D. Ill. May 20, 2020); *United States v. Hill*, No. 3:19-cr-00038 (JAM), 2020 WL 2542725 (D. Conn. May 19, 2020); *United States v. Bright*, No. 2:15CR00015-005, 2020 WL 2537508 (W.D. Va. May 19, 2020); *United States v. Bischoff*, No. 17-cr-196-JD, 2020 WL 2561423 (D.N.H. May 18, 2020); *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020); *United States v. Rountree*, No. 1:12-CR-0308 (LEK), 2020 WL 2610923 (N.D.N.Y. May 18, 2020); *United States v. Bess*, No. 16-CR-156, 2020 WL 1940809, at *9 (W.D.N.Y. Apr. 22, 2020); *United States v. Smith*, No. 12 CR. 133 (JFK), 2020 WL 1849748, at *4 (S.D.N.Y. Apr. 13, 2020); *United States v. Hernandez*, No. 18 CR. 834-04 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020); *Rodriguez*, 2020 WL 1627331, at *1; *United States v. Jepsen*, No. 3:19-CV-00073(VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *1 (S.D.N.Y. Mar. 27, 2020).

Defendant's prison has at least two employees with confirmed, open cases of the virus. *COVID-19 Cases*, Fed. Bureau Prisons (July 13, 2020), https://www.bop.gov/coronavirus/. That certainly is not an outbreak, and the Court trusts the BOP will do everything in its power to prevent it from becoming one. Even so, the virus has proven maddeningly difficult to contain in prison facilities. *See Moore*, 2020 WL 2572529, at *2 ("Some BOP facilities have seen [outbreaks] grow into hundreds of confirmed cases in a matter of weeks."). It also is undeniable

12

that an imprisoned American is more likely to contract COVID-19 than a free one. *E.g.*, Timothy Williams et al., *Infection Rates Escalate in Prisons, and Fear Among Inmates Does, Too*, N.Y. Times, June 17, 2020, A8. Thus, the presence of a once-in-a-hundred-years pandemic in and around Defendant's facility cuts in favor of his release.

    d.  Dependent Family Member

Finally, Defendant argues his ailing mother's need for his care also presents an extraordinary and compelling reason for release. The Sentencing Commission's policy statement for compassionate release before the First Step Act stated that "family circumstances" could justify compassionate release in some circumstances. U.S.S.G. § 1B1.13 cmt. n.1(C). As relevant here, the Commission provided that "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner" may provide an extraordinary and compelling reason for release. Following the First Step Act's passage, courts have disagreed as to whether this logic extends to ailing parents. *Compare United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) ("This Court sees no reason to discount this unique role simply because the incapacitated family member is a parent and not a spouse."), *with United States v. Ingram*, No. 2:14-CR-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents.").

Here, Defendant provides medical evidence that his seventy-year-old mother suffers from diabetes and "has a bad prognosis for life and function." ECF No. 216 at 2. Defendant also states that of his seven siblings, *see* ECF No. 146 ¶ 71, he is the only one who could provide end-of-life care, ECF No. 216 at 2–3. Although Defendant provides a letter from one sister stating she cannot care for their mother, ECF No. 216-3, he provides no such evidence for his other six siblings, some of whom live in Mexico, ECF No. 146 ¶ 71.

The Court agrees the need to care for a parent could be sufficient in some circumstances, but this is not such a case. Defendant did not produce enough evidence that he is the only available child who can aide his mother. However, because the issue is not dispositive and additional factfinding would only further delay Defendant's Motion, the Court need not resolve the matter. For now, suffice to say that the Court will consider Defendant's family circumstances as supportive of release, even if insufficient to justify release on their own.

When Congress sought to expand compassionate release to more federal inmates, it recognized the Sentencing Commission's criteria were inadequate. What is more, even the Commission realized there would be "extraordinary and compelling" cases that fell outside its three, narrowly drawn examples. *See* U.S.S.G. § 1B1.13. Defendant presents such a case. His draconian life sentence, rehabilitation, exposure to COVID-19, and ailing mother together constitute extraordinary and compelling reasons for release.

### C.  *§ 3553(a) Factors*

The Court also must consider if compassionate release comports with any applicable § 3553(a) factors. § 3582(c)(1)(A). The Court's lodestar is to ensure the sentence is "sufficient, but not greater than necessary." § 3553(a). In Defendant's case, the "nature and circumstances of the offense"—distributing cocaine and methamphetamine—are serious, if commonplace in the Southern District of Iowa. § 3553(a)(1). The Court also must assess Defendant as a whole person. *See Koon v. United States*, 518 U.S. 81, 113 (1996).

This was not Defendant's first conviction. *See* ECF No. 146 ¶¶ 56–60. But these earlier convictions occurred in his late teens and mid-twenties. "While age does not excuse behavior, a sentencing court should account for age when inquiring into the conduct of a defendant." *United States v. Gall*, 374 F. Supp. 2d 758, 762 n.2 (S.D. Iowa 2005), *rev'd*, 446 F.3d 884 (8th Cir.

14

2006), *rev'd*, 552 U.S. 38 (2007). Defendant now is forty-seven years old, making him about half as likely to be convicted of a crime as when he was convicted of his latest offense. U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 23 (2017).

The "need for the sentence imposed" also appears weaker after two decades of incarceration. § 3553(a)(2). Defendant already has served five years more than what Congress has since determined to be minimum punishment for his conduct. *See* § 841(b)(1)(A) (2018). The dramatic change in mandatory minimums shows that Congress recognized a life sentence was unjustifiable for those like Defendant. Defendant admittedly has returned to the United States unlawfully following previous deportations. Yet these immigration offenses did not trigger the life sentence—and thus do not weigh on its necessity.

Given the nature of Defendant's convictions and non-violent behavior in prison since 2004, ECF No. 208-1, incarceration is not necessary "to protect the public from further crimes of the defendant." § 3553(a)(2)(C). The BOP appears to agree that Defendant has made progress. Defendant entered the BOP with a "high" security classification, which recently was reduced to "medium."[6] ECF No. 208 at 6. And to the extent there are lingering public safety concerns, those are mooted by the fact Defendant would be deported following release.

Admittedly, incarceration may be the only kind of sentence available for a prisoner facing immediate deportation. § 3553(a)(3). Supervised release is not really an option for someone who is not allowed to be in the United States, supervised or not. Yet it is worth noting that deportation is a punishment, too. Defendant, for instance, will not be able to reconnect with family in Oregon. Although Defendant certainly could attempt to enter the United States'

---

[6] The BOP generally gives defendants with life sentences a "high" security classification unless an administrator waives certain public safety factors. Fed. Bureau of Prisons, Dep't of Justice, Change Notice No. 5100.08, CN-1, *Inmate Security Designation and Custody Classification* ch. 5 at 4, 9 (2019).

unlawfully again, that would require him to abandon his ailing mother and risk the harsh consequences that likely would come from another encounter with the American legal system.

On the other hand, the Sentencing Commission's Guidelines still counsel in favor of a longer sentence. ECF No. 208 at 16 (showing the Guidelines range under modern law would still be 360 months to life plus sixty months). Even so, the Guidelines are advisory and, at least here, suggest a prison term unjustly inflated because of Defendant's prior convictions. Nor would release create an unwarranted sentencing disparity with those "who have been found guilty of similar conduct." § 3553(a)(6). If anything, release would lessen an already existent sentencing disparity: sentences for this case's codefendants ranged from twenty-seven to 120 months.[7] ECF No. 146 at 1. Had the Court not been statutorily barred from giving a more equitable sentence in 2002, it would have done so.

A court's decision does not cease to be an "exercise of reason simply because it is also an exercise of compassion." *United States v. Likens*, 464 F.3d 823, 827 (8th Cir. 2006) (Bright, J., dissenting), *cited with approval in Gall*, 552 U.S. at 52 n.7. The Court grants Defendant's Motion for Compassionate Release because it is supported by extraordinary and compelling reasons as well as the § 3553(a) factors.

### D. *Release Plan*

Defendant's remaining term of imprisonment shall be reduced to time served. U.S. Immigration and Customs Enforcement shall be alerted of the date and time of release.

---

[7] Defendant received a role enhancement for giving directions to another member of the conspiracy, *id.* ¶ 50, yet other conspiracy members gave directions, too, *see id.* ¶¶ 23–24.

### III.  CONCLUSION

For the reasons stated herein, Defendant's Motion for Compassionate Release (ECF No. 216) is GRANTED.

IT IS SO ORDERED.

Dated this 14th day of July 2020.

_____
ROBERT W. PRATT, Judge
U.S. DISTRICT COURT